# United States Court of Appeals
# for the Federal Circuit

HORIZON GLOBAL AMERICAS INC.,
*Appellant*

v.

NORTHERN STAMPING CO.,
*Appellee*

Appeal from the United States Patent and Trademark Office, Patent Trial and
Appeal Board in IPR2021-01411 before Administrative Patent Judges
William V. Saindon, Scott B. Howard, and Matthew S. Meyers

## APPELLANT HORIZON GLOBAL AMERICAS INC.'S REPLY BRIEF

**BAKER & HOSTETLER LLP**
Stephanie Hatzikyriakou
Phillip D. Wolfe
1735 Market Street
Suite 3300
Philadelphia, PA 19103-7501
(215) 568-3100

Christina J. Moser
Brendan E. Clark
Key Tower
127 Public Square
Suite 2000
Cleveland, OH 44114-1214
(216) 621-0200

*Attorneys for Appellant*

February 8, 2024

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2023-1767

**Short Case Caption** Horizon Global Americas Inc. v. Northern Stamping Co.

**Filing Party/Entity** Appellant Horizon Global Americas Inc.

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 05/04/2023

Signature: s/ David B. Cupar

Name: David B. Cupar

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Horizon Global Americas Inc. | | First Brands Group, LLC (Parent Company) |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

FORM 9. Certificate of Interest

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐    None/Not Applicable                    ☐    Additional pages attached

| | | |
|---|---|---|
| David Cupar (McDonald Hopkins LLC) | Matthew Cavanagh (McDonald Hopkins LLC) | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐    Yes (file separate notice; see below)    ☑    No    ☐    N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable                    ☐    Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

I.     INTRODUCTION. .........................................................................................1

II.    ARGUMENT.................................................................................................3

    A.     Northern Stamping Is Wrong – Horizon Raises Numerous Legal
        Errors in the Board's Final Written Decision that this Court
        Reviews *De Novo*. ...................................................................................3

    B.     There Would Have Been No Motivation to Combine Works and
        Lindenman Because, as Northern Stamping Acknowledges, Each
        Could Independently Achieve the Dual Functionality that Was the
        Supposed Motivation.................................................................................4

        1.     The Board's Interpretation of Works Was Legal Error. .............5

        2.     This Court Regularly Vacates Decisions for Failure to
                Apply the Correct Legal Standard. .............................................5

        3.     The Board Was Required to Interpret Works from a Skilled
                Artisan's Perspective. ................................................................7

        4.     There Are No Native Attachments—Just Adaptors—and a
                Skilled Artisan Would Have Understood, at the Time of
                Invention, that Both Works and Lindenman Are Able to
                Accommodate Both Gooseneck and Fifth-Wheel Hitches.........9

        5.     Because a Skilled Artisan Would Have Known that Both
                Works and Lindenman Have Similar Functions, a Skilled
                Artisan Would Not Have Combined Them. .............................12

    C.     The Desire for Additional "Versatility" Is Not a Sufficient
        Motivation to Combine. ..........................................................................13

        1.     "Versatility" Is Too Generic to be a Motivation to Combine
                Elements from Specific References in the Way the Claimed
                Invention Does. .......................................................................13

2.  The Sweeping Propositions for Which Northern Stamping Relies on the *Bosch* and *Volvo* Cases Are Unsupported...........15

D.  Northern Stamping Glosses Over its Failure to Supplement the Record After the Board Admonished its Showing of Motivation to Combine in the Petition.......................................................................18

E.  Northern Stamping Never Presented Evidence Analyzing the Claimed Invention as a Whole. ............................................................20

F.  The Board's Decision Regarding the Substitute Claims Was Not Based on Substantial Evidence, and Northern Stamping Did Not Address Horizon's Arguments to the Contrary...................................23

G.  Nexus Should Have Been Presumed, or at Least Found, and the Board Viewed the Objective Indicia of Nonobviousness Through this Tainted Lens. ................................................................................28

III.  CONCLUSION.............................................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ActiveVideo Networks Inc. v. Verizon Commc'ns, Inc.*,
    694 F.3d 1312 (Fed. Cir. 2012) ...................................................................*passim*

*Adidas AG v. Nike, Inc.*,
    963 F.3d 1355 (Fed. Cir. 2020) ..................................................................26, 27

*Anacor Pharms., Inc. v. Iancu*,
    889 F.3d 1372 (Fed. Cir. 2018) ..................................................................19, 20

*Aqua Prod., Inc. v. Matal*,
    872 F.3d 1290 (Fed. Cir. 2017) ...........................................................................6

*Bosch Automotive Servs. Solns., LLC v. Matal*,
    878 F.3d 1027 (Fed. Cir. 2017) ............................................................15, 16, 17

*Brand v. Miller*,
    487 F.3d 862 (Fed. Cir. 2007) ...........................................................................19

*Ebay Inc. v. Glob. Equity Mgmt. (Sa) Pty. Ltd.*,
    No. IPR2016-01829, 2018 WL 1870503 (P.T.A.B. Apr. 18, 2018) .................30

*GSS Holdings (Liberty) Inc. v. United States*,
    81 F.4th 1378 (Fed. Cir. 2023) ...........................................................................6

*Huawei Techs. Co. v. Iancu*,
    813 F. App'x 505 (Fed. Cir. 2020) ....................................................................14

*Intel Corp. v. Qualcomm Inc.*,
    21 F.4th 784 (Fed. Cir. 2021) .....................................................................14, 17

*Interconnect Plan. Corp. v. Feil*,
    774 F.2d 1132 (Fed. Cir. 1985) ............................................................20, 22, 25

*Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*,
    688 F.3d 1342 (Fed. Cir. 2012) ...............................................................3, 9, 12

*KSR Int'l Co. v. Teleflex Inc.*,
    550 U.S. 398 (2008)...............................................................13, 15, 18, 20, 25

*Medtronic, Inc. v. Teleflex Innovations S.a.r.l.*,
  69 F.4th 1341 (Fed. Cir. 2023) ....................................................23, 28

*In re Nuvasive, Inc.*,
  842 F.3d 1376 (Fed. Cir. 2016) ...........................................................23

*Otsuka Pharm. Co. v. Sandoz, Inc.*,
  678 F.3d 1280 (Fed. Cir. 2012) ...............................................3, 15, 19

*Perfect Web Tech., Inc. v. InfoUSA, Inc.*,
  587 F.3d 1324 (Fed. Cir. 2009) ...........................................................12

*Polaris Indus., Inc. v. Arctic Cat, Inc.*,
  882 F.3d 1056 (Fed. Cir. 2018) ...........................................4, 24, 28, 29

*Princeton Vanguard, LLC v. Frito-Lay N. Am., Inc.*,
  786 F.3d 960 (Fed. Cir. 2015) ...........................................................4, 6

*Randall Mfg. v. Rea*,
  733 F.3d 1355 (Fed. Cir. 2013) ........................................................5, 7, 8

*Ruiz v. A.B. Chance Co.*,
  357 F.3d 1270 (Fed. Cir. 2004) .....................................20, 21, 22, 25

*In re Taylor Made Golf Co.*,
  589 F. App'x 967 (Fed. Cir. 2014) ..................................................5, 7, 8

*TQ Delta, LLC v. CISCO Sys., Inc.*,
  942 F.3d 1352 (Fed. Cir. 2019) ...........................................14, 17, 27

*Volvo Penta of the Am., LLC v. Brunswick Corp.*,
  81 F.4th 1202 (Fed. Cir. 2023) ...........................................................15, 17

**Statutes**

35 U.S.C. § 103 ...............................................................................3

**Rules**

37 C.F.R. § 42.63(a)..........................................................................30

# I.    INTRODUCTION.

Northern Stamping attempts to recast the standard of review for this entire appeal as one of substantial evidence, ignoring the Board's many legal errors. In so doing, Northern Stamping essentially argues the art was so well developed that the claims must have been obvious—however the Board chose to get there. Definitionally, this is hindsight, illustrating why this Court and the Supreme Court have fashioned mandatory safeguards to prevent the type of obviousness analysis Northern Stamping presented to, and adopted by, the Board.

As to the Challenged Claims, both cited references were known to function similarly and therefore there would have been no motivation to combine them to achieve the claimed invention. As part of the Board's error, it failed to consider the Works reference from the perspective of a skilled artisan at the time of invention. Had the Board done so, it would have found that Works was known to accommodate both types of hitches, as does the Lindenman reference. Moreover, Northern Stamping does not truly contest that both Works and Lindenman *could* accommodate both types of hitches. Rather, it contends that the references do not disclose a system that can *natively* accommodate both hitch types without an adaptor. But this distinction is unfounded as all hitch systems in this case require an adaptor to accommodate either hitch type. And because a skilled artisan at the relevant time would have known that both Works and Lindenman had similar

functions and therefore would not have combined the two references, the Board again erred in finding a motivation to combine where there was none.

Further supporting Horizon's argument that this Court should reverse the judgment are the number of additional legal errors in the Board's motivation-to-combine analysis. These include, for example, its use of the generic rationale of "versatility," improper reliance on the inventors' path to invention, and the failure to consider the claimed invention as a whole.

As to the Substitute Claims, the Board's decision was similarly not based on substantial evidence and Northern Stamping largely failed to rebut Horizon's arguments. Northern Stamping relied on generic benefits supposedly resulting from using the cited references. But there was no evidence these benefits would occur from the proposed combination. Moreover, that combination would have destroyed the primary reference's stated purpose. Finally, the Board erred in finding nexus "at or near zero," and therefore incorrectly reviewed the objective indicia evidence through a tainted lens.

Accordingly, this Court should reverse, or at least vacate and remand, the Board's decision so that the Board may review the evidence through the proper legal lens consistent with the proper standards.

## II. ARGUMENT

### A. Northern Stamping Is Wrong – Horizon Raises Numerous Legal Errors in the Board's Final Written Decision that this Court Reviews *De Novo*.

Northern Stamping contends that each issue Horizon raises is factual and only reviewed for substantial evidence. Dkt. 20 ("NBr.") at 1. That is simply not true. Horizon raises numerous legal errors in the Board's final written decision that this Court reviews *de novo*. They include the Board's:

- Failure to appreciate that this Court's precedent cautions against combining two references where, like here, both independently accomplish similar functions, as discussed in *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1369 (Fed. Cir. 2012); Dkt. 17 ("HBr.") at 35. And in furtherance of this error, the Board failed to analyze the cited references through the proper legal framework, from the perspective of a skilled artisan at the time of invention. HBr. at 28-30.

- Improper invoking a generic motivation-to-combine rationale of "versatility" under *ActiveVideo Networks Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1328 (Fed. Cir. 2012); HBr. at 36-37.

- Improper reliance on the inventors' own path to invention, including the inventors' communication with Ford. HBr. at 38-41; *Otsuka Pharm. Co. v. Sandoz, Inc.*, 678 F.3d 1280, 1296 (Fed. Cir. 2012).

- Failure to consider the entirety of the claimed invention as required under 35 U.S.C. § 103, and its focus on only the invention's "gist." HBr. at 39-42.

- Improper burden shifting requiring Horizon to prove nonobviousness. HBr. at 44-48.

- Improper reliance on conclusory expert testimony as evidence of a motivation-to-combine the cited references, regarding both the Challenged and Substitute Claims. HBr. at 45-53.

- Failure to consider that the combination of references cited as to the Substitute Claims was contrary to the major benefits of, and stated purposes in, the primary reference. HBr. at 54-56; *Polaris Indus., Inc. v. Arctic Cat, Inc.*, 882 F.3d 1056, 1067-69 (Fed. Cir. 2018).

- Requirement of an inflated evidentiary burden for Horizon to prove nexus between the commercial product and the claims. HBr. at 58-61.

This Court should review each of these issues *de novo*. *See Princeton Vanguard, LLC v. Frito-Lay N. Am., Inc.*, 786 F.3d 960, 964 (Fed. Cir. 2015) (stating "[w]hether the Board applied the correct legal standard . . . is a question of law we review de novo"). There can be no substantial evidence where the evidence was not assessed through the proper legal framework. *See, e.g.,* NBr. at 37, 66-69. Beyond the legal errors, even assuming the Board's decision was decided through the correct legal framework, the Board's obviousness determination regarding both the Challenged and Substitute Claims was not supported by substantial evidence. *See* HBr. at 42-44, 48-56.

**B. There Would Have Been No Motivation to Combine Works and Lindenman Because, as Northern Stamping Acknowledges, Each Could Independently Achieve the Dual Functionality that Was the Supposed Motivation.**

Because each cited reference could accommodate both relevant hitch types, and therefore functioned similarly, there would have been no reason to combine them to achieve the claims' dual functionality. Additionally, in failing to recognize controlling precedent on this issue, the Board committed legal error by not interpreting the references' teachings in the appropriate context.

### 1. The Board's Interpretation of Works Was Legal Error.

As a preliminary matter, Northern Stamping contends that each issue Horizon presents on appeal is factual, and therefore, that application of the wrong legal standard is not legal error. NBr. at 1. For example, Northern Stamping contends that the Board found "as a factual matter" that Works does not teach accommodation of a fifth-wheel hitch. *Id.* at 21. But as with other issues, the Board made that finding through the wrong legal framework. *See* HBr. 28-34. This Court should instruct the Board to interpret Works through the eyes of a skilled artisan "in the context of what was generally known in the art at the time of the invention." *See In re Taylor Made Golf Co.*, 589 F. App'x 967, 971 (Fed. Cir. 2014) (citing *Randall Mfg. v. Rea*, 733 F.3d 1355, 1362 (Fed. Cir. 2013)).

Northern Stamping attempts to distinguish *Taylor Made*, arguing it does not apply because it "vacated a finding of *non*-obviousness." NBr. at 50. This misses the mark completely. The point is that this Court reversed a Board decision for failing to consider the prior art teachings through the proper legal framework, as the Board did here. Notably, Northern Stamping does not distinguish this Court's *Randall Mfg.* decision cited for a similar proposition. HBr. at 28-29.

### 2. This Court Regularly Vacates Decisions for Failure to Apply the Correct Legal Standard.

Northern Stamping is also wrong that the Board **applied** the correct legal standard merely because it supposedly **recited** that standard. NBr. at 48-49. This

Court regularly vacates decisions for not applying the correct standard and should do so again here. For example, in *GSS Holdings*, this Court vacated a judgment and stated that "[t]o the extent any finding . . . 'is derived from the application of an improper legal standard to the facts, it cannot be allowed to stand.' 'In such a circumstance, this court must remand for new factual findings in light of the correct legal standard.'" *GSS Holdings (Liberty) Inc. v. United States*, 81 F.4th 1378, 1382, 1384 (Fed. Cir. 2023) (citations omitted) (stating that although the court "started its analysis by correctly recognizing that the parties advocated for an analysis under" one doctrine, the court analyzed the facts using a second, incorrect doctrine). Moreover, determining whether the originating court applied the correct legal standard is a question this Court reviews *de novo*. *Id*. at 1381. Likewise, this Court in *Princeton Vanguard* vacated a T.T.A.B. decision for applying the incorrect legal standard, stating "[w]hether the Board applied the correct legal standard . . . is a question of law we review de novo." 786 F.3d at 964.

These decisions comport with common sense: courts say what the law is, and reviewing courts determine whether the originating court correctly applied the law to the facts of the case. *See Aqua Prod., Inc. v. Matal*, 872 F.3d 1290, 1324 (Fed. Cir. 2017) (citing the Supreme Court's monumental decision in *Marbury v. Madison*, stating "it is the prerogative of the judiciary 'to say what the law is.'"). This exercise is entirely different from the originating court's responsibility to

weigh competing evidence to determine the underlying facts themselves. Here, the

Board's supposedly correct recitation is not evidence of correct application. *See*

NBr. at 48 (quoting Appx9). Accepting Northern Stamping's logic improperly

promotes form over substance—accepting wrong outcomes so long as the legal

standard is correctly stated. This, of course, cannot stand. The Board clearly

applied the wrong legal standard in interpreting Works warranting vacatur and

remand. *See* HBr. at 28-34.

### 3. The Board Was Required to Interpret Works from a Skilled Artisan's Perspective.

Northern Stamping continues to perpetuate the wrong legal standard under

which Works must be interpreted. NBr. at 43-46. Namely, Northern Stamping

contends that "a plain reading of Works is evidence enough" that Works "does not

disclose a mounting system for a fifth wheel hitch." *Id.* at 43. A "plain reading,"

however, is not the relevant inquiry because it ignores "the context of what was

generally known in the art at the time of the invention." *Taylor Made*, 589 F.

App'x at 971 (citing *Randall Mfg.*, 733 F.3d at 1362).

Northern Stamping ignores the testimony of Horizon's expert, Mr.

Walstrom, who agreed with Northern Stamping's counsel that Works could

accommodate both types of hitches, fifth-wheels and goosenecks. Appx4213

(67:18-21). Northern Stamping also ignores Mr. Walstrom's testimony that he was

"aware" from his experience in the industry and attending trade shows that a

product to make Works compatible with a fifth-wheel "existed as a normal course of business" at the time of invention. Appx4272-Appx4273 (126:6-25, 127:6-9). Northern Stamping's point about Works not being **explicit** in this regard is irrelevant if it would have been known in the art, and thus available to a skilled artisan when reading Works. *Taylor Made*, 589 F. App'x at 971 (citing *Randall Mfg.*, 733 F.3d at 1362).

Lastly as to Works' teachings, Northern Stamping leads this Court to error in arguing that B&W's catalog should be ignored, even if it was evidence, because it "does not change what Works itself says." NBr. at 45. Though true that the B&W catalog is not prior art to the '585 patent, and thus does not itself demonstrate that Works could accommodate a fifth-wheel at the time of invention, *it was not offered as such*. Rather, Mr. Walstrom's point was that the catalog demonstrated what was available and known to skilled artisans at the time of invention. Appx4213 (67:18-21); *see Taylor Made*, 589 F. App'x at 971 (citing *Randall Mfg.*, 733 F.3d at 1362). Northern Stamping never proffered contrary evidence disputing these facts.

Had the Board properly interpreted Works through the appropriate legal lens, the Board would have understood Works to accommodate both gooseneck and fifth-wheel hitch systems at the time of invention. And because, as discussed below, the hitch systems of Works and Lindenman each function similarly— accommodating both goosenecks and fifth-wheels—there would have been no

motivation to combine them to achieve that dual functionality. *See Kinetic Concepts*, 688 F.3d at 1369.

>    **4.    There Are No Native Attachments—Just Adaptors—and a Skilled Artisan Would Have Understood, at the Time of Invention, that Both Works and Lindenman Are Able to Accommodate Both Gooseneck and Fifth-Wheel Hitches.**

Northern Stamping does not appear to contest that Works and Lindenman could each independently accommodate both gooseneck and fifth-wheel systems. NBr. at 35-36. Rather, Northern Stamping's arguments are about supposed "native" attachments versus adapters. *Id.* at 35-36, 41-47. Essentially, Northern Stamping contends that Works could "natively" accommodate a gooseneck, Lindenman could "natively" accommodate a fifth-wheel, and that the only way for Works or Lindenman to accommodate both hitch types is through the use of an adaptor. *Id.* Northern Stamping argues that the hitch mounting system of the Challenged Claims, by contrast, could natively accommodate both hitch styles. *Id.* Therefore, Northern Stamping contends, the Board appropriately found that even if Works and Lindenman could accommodate both hitch types, there would still be a motivation to combine because it would be beneficial to eliminate the need for an adaptor. *Id.*; Appx19-20.

This rationalization constructs a false distinction. By way of example, certain gooseneck adapters attach to a hitch system at a single center point, like in the Challenged Claims and Works, and others attach to a hitch system via a

plurality of receivers, like in Lindenman. Similarly, certain fifth-wheel adapters attach to a hitch system at a single center point, like in Works, and others attach to a hitch system via a plurality of receivers, like in the Challenged Claims and Lindenman. Taken in context, an adapter is ***always*** needed, whether in reference to the Challenged Claims, Works, or Lindenman, and whether to accommodate a fifth-wheel or gooseneck. Stated differently, there are no "native" attachments; only different types of adapters. *See* HBr. at 37-39.

The Challenged Claims themselves dispel the notion of a "native" attachment and emphasize the need for an adapter to accommodate both gooseneck and fifth-wheel hitches. Challenged Claim 16 states the "mid rail [has] a socket capable of accepting a gooseneck hitch ball." Appx154 (8:14-17). Figures 5 and 6 of the '585 patent show socket 42 of the claimed hitch system accepting the adapter gooseneck hitch ball 18 so that the claimed hitch mounting system can engage a trailer's coupling member. Appx153 (5:6-8). Challenged Claim 16 additionally recites "receiving members configured to engage [the] leg[s] of a fifth wheel hitch." Appx154 (8:19-20). Figures 6 and 7 of the '585 patent show "sockets 30" of the claimed hitch system as configured to receive the "legs 57" of the adapter "fifth wheel hitch 55." Appx152 (3:52-54). That is, no matter whether the Challenged Claims' hitch system is accommodating a gooseneck or fifth-wheel hitch, it is doing so with an adapter. Works and Lindenman are no different.

Works has a center attachment point, and therefore would have been understood to accommodate both a gooseneck and fifth-wheel hitch using an adapter that attached to the single, center receiver 24. *See* Appx2808 (Fig. 2). The adapter for the gooseneck is shown as 10 in Works' figure 2. *Id.* The adapter for the fifth-wheel similarly attached to the center receiver, an example of which is shown in the B&W catalog. Appx4213 (67:2-6), Appx3437.

Lindenman, touting "unparalleled versatility," is explicit about accommodating both gooseneck and fifth-wheel hitches. Lindenman's supposed "significant advance in the art" is its ability to connect to numerous accessories including "fifth wheel" and "gooseneck" hitch assemblies. Appx2836 (1:46-52). Northern Stamping does not challenge Lindenman's ability to attach to legs of a fifth-wheel at its four receivers. NBr. at 11-12. The adapter for the gooseneck similarly attached to the four receivers. *See id.* at 46-47; Appx3293-3294 (¶106) (citing Appx2273, Appx2408). Mr. Becker, Northern Stamping's expert, testified to this effect, stating that Lindenman could accommodate a gooseneck hitch by using "a structure that went into the four receivers and then suspended a goose ball"—the same type of structure shown in the Reese® catalogs during prosecution. Appx3399 (73:9-14); *see also* Appx2408.

A skilled artisan would have understood Works and Lindenman to accommodate both types of hitches.

### 5. Because a Skilled Artisan Would Have Known that Both Works and Lindenman Have Similar Functions, a Skilled Artisan Would Not Have Combined Them.

Though it has effectively conceded the issue because, as discussed above, adaptors were known to be available to accommodate both hitch systems, Northern Stamping still argues that even if Works and Lindenman could each accommodate gooseneck and fifth-wheel hitches, "one of ordinary skill would still have been motivated to combine Works and Lindenman." NBr. at 35-36, 41. Notably, however, Northern Stamping ignores this Court's decision in *Kinetic Concepts*. *See* HBr. at 35.

In *Kinetic Concepts*, this Court agreed that there was "no reason to combine the features of [two] devices into a single device" where "both . . . references independently accomplish ***similar*** functions," despite differences in the way they function. 688 F.3d at 1369 (emphasis added). Likewise, here, both Works and Lindenman function similarly—using adapters to accommodate the user's preferred hitch or other accessory. *See id.* While this Court may rely on "logic, judgment, and common sense" to sustain the Board's decision as Northern Stamping suggests, it must do so in accord with its precedent, not in ignorance of it. NBr. at 42 (quoting *Perfect Web Tech., Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1329 (Fed. Cir. 2009)). Because Works and Lindenman function similarly, there

would have been no motivation to combine them to accommodate both goosenecks and fifth-wheels—something they each do independently.

### C. The Desire for Additional "Versatility" Is Not a Sufficient Motivation to Combine.

#### 1. "Versatility" Is Too Generic to be a Motivation to Combine Elements from Specific References in the Way the Claimed Invention Does.

As a preliminary matter, Horizon does not contend, as Northern Stamping suggests, that versatility is a legally insufficient motivation to combine "in all cases." NBr. at 53. Such a sweeping rule is not necessary, nor desired, to decide this case. Rather, Horizon contends that versatility, as used in this case, and defined by Northern Stamping's own expert, is not a legally sufficient motivation. HBr. at 36-37.

Horizon's position does not "flatly contradict[]" *KSR* either as Northern Stamping suggests. *See* NBr. at 53-54. Northern Stamping offers no explanation or analysis on this issue, just a block quote from *KSR* that provides general rules of law without the nuance that comes from this Court's opinions post-dating the Supreme Court's decision. NBr. at 54. One such example is *ActiveVideo*, 694 F.3d at 1327-28.

Northern Stamping attempts to distinguish *ActiveVideo* by arguing that the concepts of "efficiency" and "market demand" there were not too general, but rather were insufficient motivations because there was only conclusory expert

testimony in support. NBr. at 54-55. The motivation and expert testimony in *ActiveVideo* are tied together, however. There, this Court stated that the accused infringer's expert's testimony that the claimed invention would have been obvious because a skilled artisan wanted to "build[] something better," "more efficient, cheaper," that "had more features," and was "more attractive to . . . customers" was generic and bore no relation to any specific combination of prior art elements. *ActiveVideo*, 694 F.3d at 1328. The motivation was generic, and the supporting testimony was conclusory.

This reading of *ActiveVideo* is confirmed by *Intel*, where this Court stated, "the motivation of increased efficiency [in *ActiveVideo* was] asserted so generically as to be legally insufficient" **and** the supporting expert testimony bore "no relation to any specific combination of prior art elements." *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 784, 797 (Fed. Cir. 2021) (quoting *Huawei Techs. Co. v. Iancu*, 813 F. App'x 505, 510 (Fed. Cir. 2020) and *ActiveVideo*, 694 F.3d at 1328). Here, the nebulous desire for "versatility"—defined by Northern Stamping's Mr. Becker as merely being "capable of mounting a variety of different accessories"— is equally generic and supported only by conclusory testimony. *ActiveVideo*, 694 F.3d at 1328 (emphasis in original and citations omitted); *see TQ Delta, LLC v. CISCO Sys., Inc.*, 942 F.3d 1352, 1358-59 (Fed. Cir. 2019) ("***Conclusory expert testimony does not qualify as substantial evidence***." (emphasis added)). Thus,

versatility does not provide why a skilled artisan "would have combined elements from specific references *in the way the claimed invention does*." *ActiveVideo*, 694 F.3d at 1328 (citing *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007)) (emphasis in original).

Similarly, the "market demand" evidence here is generic and is only about the inventors' actual path to invention, which can "never lead[] to a conclusion of obviousness." *Otsuka*, 678 F.3d at 1296; *see* HBr. at 38-39, 40-42; Appx35. Northern Stamping ignores this nuance to *KSR*'s general rule about looking to market forces. NBr. at 40-41. Here, Ford merely asked for a system that could accommodate both goosenecks and fifth-wheels that could be used in Ford's trucks but had "zero say" in the final design. *See* HBr. at 41-42 (quoting Appx3939 (42:2-5)); NBr. at 37-39. Reading *KSR* and *Otsuka* together, general market forces can be considered, but not the inventors' own development efforts, which requires ignoring the inventors' interactions with Ford. *Otsuka*, 678 F.3d at 1298; *see* NBr. at 38-41; Appx35. And because Northern Stamping did not offer, and the Board did not rely on, any evidence of market forces beyond the inventors' interactions with Ford, there is no market-demand evidence to be properly considered. *Id.*

### 2. The Sweeping Propositions for Which Northern Stamping Relies on the *Bosch* and *Volvo* Cases Are Unsupported.

Neither the *Bosch* nor the *Volvo* cases stand for the propositions for which Northern Stamping cites them.

Northern Stamping cites *Bosch* for the proposition that versatility is a sufficient motivation to combine. *See* NBr. at 33 (citing *Bosch Automotive Servs. Solns., LLC v. Matal*, 878 F.3d 1027, 1035-36 (Fed. Cir. 2017)). But *Bosch* does not say that. Indeed, versatility itself was not relied on as a motivation at all.

The patent in *Bosch* related to a universal handheld tool for (i) activating tire pressure sensors, and (ii) communicating with the sensor's receiving unit. 878 F.3d at 1030. The problem prior to invention was that different manufacturers used different devices and types of signals to communicate with these types of sensors. *Id*. at 1029-30. The claimed invention was a universal tool and designed to work with all known architectures. *Id*.

The Board found that each of the claimed means of activation was known in the art and that other references taught tools that could communicate with sensors by different manufacturers. *Id*. at 1035-36. On appeal, this Court determined that a "skilled artisan would have been motivated by the known compatibility issues in the art . . . and the known solution of a universal communication tool . . . to combine the different activation means . . . into a single universal tool." *Id*. at 1036. This is the type of motivation *ActiveVideo* requires, explaining why a skilled artisan "would have combined elements from specific references *in the way the claimed invention does*." *ActiveVideo*, 694 F.3d at 1328 (emphasis in original and citations omitted).

"Versatility" was not cited in *Bosch* as a motivation to combine. Rather, the references cited for teaching the "communicating" function had "the versatility to communicate with sensors by different manufacturers." *Bosch*, 878 F.3d at 1035-36. There was instead a separate motivation to combine other art with these "versatile" references. Conversely, "versatility," as used here, was itself cited as the motivation to combine references. *See* Appx20 (citing Appx2836 (1:46-52)).

The *Volvo* decision is likewise inapposite for the proposition cited—that a "broadly applicable motivation may be sufficient as long as it is supported by more than conclusory expert testimony." NBr. at 54 (quoting *Volvo Penta of the Am., LLC v. Brunswick Corp.*, 81 F.4th 1202, 1209 (Fed. Cir. 2023)). *Volvo* relies on this Court's *Intel* decision that delineates when a motivation is too general. *See Intel Corp. v. Qualcomm Inc.*, 21 F.4th 784, 797 (Fed. Cir. 2021). *Intel* explains that when, like here, a general motivation is supported by only conclusory expert testimony and bares "no relation to any specific combination of prior art elements," it is "legally insufficient." *Id*. (quoting *ActiveVideo*, 694 F.3d at 1328; citing *TQ Delta*, 942 F.3d at 1358-59).

Here, Northern Stamping only offered conclusory expert testimony as to why a skilled artisan would have combined the cited references. Appx2752-2756, Appx2775-2778 (¶¶82-87, ¶¶124-29). *See TQ Delta*, 942 F.3d at 1358-59 ("***Conclusory expert testimony does not qualify as substantial evidence***."

(emphasis added)). The testimony was near verbatim of Northern Stamping's

proffered rationale in the Petition, which, as Horizon discussed in its opening brief,

the Board itself characterized as "rote recitation of formulaic, canned statements."

HBr. at 43-44; Appx89-93, Appx111-14 (Petition); Appx3145 (Institution

Decision); Appx2752-2756, Appx2775-2778 (¶¶82-87, ¶¶124-29) (Becker

declaration). Therefore, *Volvo's* allowance of "broadly applicable motivation[s]"

does not apply here.

### D. Northern Stamping Glosses Over its Failure to Supplement the Record After the Board Admonished its Showing of Motivation to Combine in the Petition.

As discussed in Horizon's opening brief, Northern Stamping's Petition and

its expert's declaration provided only conclusory motivation to combine rationale.

HBr. at 45-48. In the Board's own words, the Petition provided only a "nominal"

articulation of six *KSR* obviousness rationales with "little development" and "each

read[ing] nearly identically." Appx3142, Appx3145; Appx92-93. While the

proffered rationale was sufficient for "purposes of institution," the Board warned

that Northern Stamping "***still must*** provide" reasons as to why a skilled artisan

would have considered the claimed invention obvious. Appx3145-3146 (emphasis

added) (citing *Orthokinetics*, 806 F.2d at 1575).

Horizon did not state, as Northern Stamping suggests, that Northern

Stamping provided no additional evidence following the Institution Decision. NBr.

at 50-51. Rather, the additional motivation-to-combine evidence was irrelevant because it was not tied to the time of invention – Northern Stamping does not contend otherwise – and therefore did not bolster its evidence. HBr. at 46-47; Appx3818 (quoting Appx3396 (60:1-17); Appx3820 (quoting Appx3399-3400 (73:15-74:2)). The testimony of Mr. Walstrom and Mr. Stanifer that Northern Stamping now cites is similarly irrelevant because it is about the actual path to invention, which can "never lead[] to a conclusion of obviousness." *Otsuka*, 678 F.3d at 1296; *see* NBr. at 51 (citing Appx4312 (166:13-14) (Walstrom) and Appx3927 (30:2-3) (Stanifer)). Because of Northern Stamping's lack of motivation-to-combine evidence, the Board needed to, and did, improperly fill the expertise gaps as a substitute for record evidence. *Brand v. Miller*, 487 F.3d 862, 868-69 (Fed. Cir. 2007). In effect, this shifted the burden to Horizon to prove nonobviousness without Northern Stamping having presented a prima facie case of obviousness. *See* HBr. at 44-48.

Northern Stamping attempts to draw parallels between this case and this Court's *Anacor* decision to dispel any notion that the Board wrongly shifted the burden to Horizon to prove nonobviousness. NBr. at 52 (citing *Anacor Pharms., Inc. v. Iancu*, 889 F.3d 1372, 1382 (Fed. Cir. 2018)). But *Anacor* is inapposite here. The Board's Institution decision essentially stated that Northern Stamping's Petition and its expert offered only conclusory assertions of motivation to combine,

nearly mimicking, without more, the general rationales espoused in *KSR*, and

Northern Stamping presented only irrelevant evidence post-Institution. Appx28-29;

Appx3142, Appx3145; Appx92-93; Appx3818 (quoting Appx3396 (60:1-17));

Appx3820 (quoting Appx3399-3400 (73:15-74:2)); Appx4312 (166:13-14)

(Walstrom); Appx3927 (30:2-3) (Stanifer). *Anacor* had no such admonishment by

the Board about the petitioner's *prima facie* case. *Anacor* is therefore inapposite,

and the Board did indeed shift, or at least lower, the burden by which Northern

Stamping was required to prove obviousness.

Even if Northern Stamping turns this into a factual dispute (which it is not),

Northern Stamping's dearth of evidence on motivation to combine, supported by

conclusory expert testimony, is not substantial evidence. *See* HBr. at 47-48.

### E. Northern Stamping Never Presented Evidence Analyzing the Claimed Invention as a Whole.

Horizon explained that the evidence of obviousness presented by Northern

Stamping and its expert, and relied on by the Board, was insufficient because

neither Northern Stamping, nor its expert, evaluated the claimed invention as a

whole. *See* HBr. at 39-43, 49-50; *Interconnect Plan. Corp. v. Feil*, 774 F.2d 1132,

1137-38 (Fed. Cir. 1985) (stating that factual issues in an obviousness inquiry

include determining "the differences between the prior art and the claimed

invention *as a whole*") (emphasis added). Instead, Northern Stamping and its

expert engaged in the type of analysis admonished in *Ruiz v. A.B. Chance Co.*, 357

F.3d 1270, 1275 (Fed. Cir. 2004). *See* HBr. at 42-43. As to the Challenged Claims,

Northern Stamping's expert analyzed each *element* of the claims to determine if

the element was rendered obvious. Appx2758-2773, Appx2780-2789. Northern

Stamping made the same blunder in its Petition. Appx95-109, Appx116-125. As to

the Substitute Claims, Northern Stamping's expert similarly focused only on

whether each *element* of the Substitute Claims was present in Withers '317 or

Fandrich. Appx4490-4503.

While *Ruiz's* general rule about the appropriate approach to determining the

obviousness of an invention applies here, its facts and holding are inapposite to the

circumstances in this case. Northern Stamping contends the motivation-to-combine

holding of *Ruiz* is applicable because the two references in *Ruiz* "address[ed]

precisely the same problem," as do supposedly Works and Lindenman—

"providing an underbed mounting system for a hitch connection." NBr. at 49

(quoting *Ruiz*, 375 F.3d at 1270). But this supposedly common problem between

Works and Lindenman is not even a problem, it is a solution. And even if it was a

problem in the abstract, Works and Lindenman are not so general as for their

problems to be "precisely the same." *See Ruiz*, 375 F.3d at 1270. Works addresses

the problem of needing a structure that "can be securely attached to hydroformed

frame members without the use of welds, additionally drilled holes, or excessive

clamping pressures." Appx2810 (2:26-29). Conversely, Lindenman addresses the

problem of needing a structure that is an "underbed mounting system of relatively simple construction," that also offers "unparalleled versatility." Appx2836 (1:43-49). Thus, the holding in *Ruiz* is inapposite to the facts here.

Notably, Northern Stamping does not point to where the Board analyzed the claims as a whole. And although noting Horizon's argument about the Board's focus on only the "gist" of the invention, Northern Stamping makes no attempt to substantively address this argument. NBr. at 49. Instead, Northern Stamping argues its phantom evidence rather than addressing how the Board made a legal determination of obviousness. *Id.* Northern Stamping likely did not respond to Horizon's argument because it could not, given the Board focused only on the "*notion of combining the two socket types in one hitch*, not [on] any particular configuration of hitch that had such a combination." Appx22 n.15 (emphasis in original); *see* HBr. at 39-42. Accordingly, Northern Stamping did not present, and therefore the Board did not evaluate, the claimed invention as a whole as compared to the cited references as a whole "so that their teachings [could be] applied in the context of their significance to a technician at the time . . . without . . . knowledge of the solution." *Interconnect*, 774 F.2d at 1143. This Court should therefore reverse the Board's obviousness determination.

**F.     The Board's Decision Regarding the Substitute Claims Was Not Based on Substantial Evidence, and Northern Stamping Did Not Address Horizon's Arguments to the Contrary.**

Northern Stamping's lackluster effort in addressing Horizon's arguments about Substitute Claims 21 and 22 is glaringly apparent. NBr. at 66-69. Horizon specifically set forth why Northern Stamping did not provide "an adequate 'evidentiary basis for [the Board's] findings,'" and thus the Board's decision regarding the Substitute Claims was not based on substantial evidence. HBr. at 48-56; *see In re Nuvasive, Inc.*, 842 F.3d 1376, 1382 (Fed. Cir. 2016). Rather than addressing Horizon's arguments, Northern Stamping, merely rehashes the evidence it presented to the Board and accuses Horizon of ignoring the standard of review. NBr. at 66-69. But first, even if there was substantial evidence, it is not enough to assess the evidence outside of the proper legal framework. And second, Horizon's arguments regarding the proper legal analysis have largely gone unanswered.

Northern Stamping wrongly contends Horizon ignores the standard of review. NBr. at 69. Horizon thoroughly explained that Northern Stamping's presented evidence is not supported by rational underpinnings, the Board's reliance on it does not amount to substantial evidence, and that this Court has previously reversed Board decisions in similar circumstances—where the proposed combination of references destroyed the major benefits and stated purposes of the primary reference. HBr. at 48-56; *see Medtronic, Inc. v. Teleflex Innovations*

*S.a.r.l.*, 69 F.4th 1341, 1349-50 (Fed. Cir. 2023); *Polaris*, 882 F.3d at 1061, 1067-69. Moreover, Northern Stamping's contention that "substantial evidence supports the Board's finding" is irrelevant if the Board did not view the facts through the proper legal framework. NBr. at 69. Here, the Board, through Northern Stamping's persuasion, mis-stepped in understanding the controlling case law and specifically what Northern Stamping was required to present to prove the Substitute Claims unpatentable. *See* HBr. at 48-56. This cannot form the basis for a decision supported by substantial evidence.

In rehashing its evidence, Northern Stamping fails to address Horizon's arguments as to why the Board's reliance on such evidence was improper. First, while Northern Stamping relies on its expert's testimony that it would have been obvious for a skilled artisan to combine Withers '317 and Fandrich (NBr. at 66-67), Northern Stamping does not address Horizon's argument that this testimony is a hind-sight driven obviousness analysis not supported by rational underpinnings. *See* HBr. at 49-50. In particular, Mr. Becker's approach to obviousness analyzed whether each ***element*** of the Substitute Claims was present in the cited references, Withers '317 and Fandrich. Appx4490-4503. Mr. Becker did not, as required, determine "the differences between the prior art and the claimed invention ***as a whole*** . . . so that their teachings are applied in the context of their significance to a technician at the time—a technician without . . . knowledge of the solution."

*Interconnect*, 774 F.2d at 1137-38, 1143. Mr. Becker's "A + B + C" approach discounts "the value of combining various existing features or principles in a new way to achieve a new result—often the very definition of invention." *Ruiz*, 357 F.3d at 1275. The Supreme Court has similarly, and unequivocally, stated that patent claims are "not proved obvious merely by demonstrating that each of its elements [were], independently, known in the prior art." *KSR*, 550 U.S. at 418. Mr. Becker's approach to motivation-to-combine fares no better.

Second, Northern Stamping also fails to address Mr. Becker's empty statements (the same statements that Northern Stamping relies on to argue substantial evidence) in support of his motivation-to-combine argument. *See* HBr. at 50-51. The common theme running through each of Mr. Becker's statements is that they are not tied to the specific combination of Fandrich and Withers '317. Rather, Mr. Becker's testimony is only that it would have been obvious to use Fandrich's tubular members in the context of a general "underbed hitch mounting system," not necessarily the structure disclosed in Withers '317. NBr. at 67; *see also* Appx43. For example, speaking only generally, Mr. Becker said that Fandrich's tubular members "***could*** exhibit sufficient strength" compared to other options. Appx4493 (¶24) (citation omitted); NBr. at 67. But Mr. Becker offered no testimony, and Northern Stamping offered no other evidence, that Fandrich's

tubular members **would** exhibit "sufficient strength" when combined with the specific Withers '317 configuration.

Same with Mr. Becker's statements that "tubular members have been used . . . for years," that they "would be readily available" and a "simple substitution" at the time of invention, and therefore "obvious to try." Appx4493-4494 (¶¶25-27); *see* HBr. at 51. Northern Stamping did not address how or whether Fandrich's tubular members "have been . . . used for years" with the "stamped-layer construction" of Withers '317 or whether they were "readily available" to be "simpl[y] substitut[ed]" with the actual Withers '317 structure as opposed to a generic, non-specific underbed hitch mounting system, which is not enough. Indeed, Northern Stamping cites to the Board's decision stating only that Fandrich's tubular members were "a known shape in the specific context at issue, truck-bed-mounted trailer hitches . . . ." NBr. at 68-69. But that is not the relevant inquiry.

Rather, Northern Stamping was required to prove a motivation to combine the **specific references** relied upon. That is, based on Northern Stamping's asserted combination, Northern Stamping was required to prove that a skilled artisan would have been motivated to specifically combine Fandrich's tubular members with the Withers '317 hitch system while accounting for the fundamental differences between the two references. *ActiveVideo*, 694 F.3d at 1327; *Adidas AG v. Nike,*

*Inc.*, 963 F.3d 1355, 1359 (Fed. Cir. 2020). Mr. Becker's statements, the only motivation evidence relied on by Northern Stamping and the Board regarding the Substitute Claims, amount to nothing more than general vagaries, devoid of context and explanation.

Similarly, Northern Stamping did not address Mr. Becker's empty assertions about "design incentives" and "market forces." *See* HBr. at 52. Mr. Becker testified that using Fandrich's tubular members "***may***" produce cost savings. Appx4494 (¶28). But this testimony was not specific to Fandrich's tubular members combined with Withers '317. Northern Stamping presented no evidence that Fandrich's tubular members combined with Withers '317 would have ***actually*** resulted in weight and cost reductions. Mr. Becker's conclusory, non-specific statements about the motivation to combine Fandrich and Withers '317 "is inadequate to support [the Board's] obviousness determination on substantial evidence review." *TQ Delta*, 942 F.3d at 1359.

Third, Northern Stamping ignores the fact that adding Fandrich's tubular members to Withers '317 runs contrary to the major benefits of, and stated purposes in, Withers '317. *See* HBr. at 55-56. The hitch system in Withers '317 has a "stamped-layer construction," allowing it to be fabricated as a "one piece" or "layered two-piece construction," and "easily assembled." Appx41; Appx3869 (1:38, 2:65-67). Simply swapping out Withers '317's cross members for

Fandrich's tubular members, as Northern Stamping proposes, would unnecessarily complicate the manufacturing process, and runs contrary to the major benefits and stated purposes of Withers '317 because Fandrich's tubular members cannot be stamped along with the rest of Withers '317. *See* HBr. at 17, 51, 54. The Board chalked-up these issues as relating to "best business or manufacturing considerations" and erred in ignoring that Northern Stamping's "proposed motivation would interfere with [Withers '317's] stated purpose." Appx44; *Medtronic*, 69 F.4th at 1349-50; *see Polaris*, 882 F.3d at 1061, 1067-69 (vacating Board decision that failed to consider whether modifying prior art reference would undermine its goal, shared with the challenged claims, of constructing stable all-terrain vehicles).

Northern Stamping did not meet its burden to prove that the claims would have been obvious, and this Court should reverse the Board's decision regarding the Substitute Claims. HBr. at 48-56.

## G. Nexus Should Have Been Presumed, or at Least Found, and the Board Viewed the Objective Indicia of Nonobviousness Through this Tainted Lens.

Northern Stamping's principal nexus argument is that the product drawing compared to the claims was merely a "conception drawing" that was not connected "to the commercial product sold to Ford." NBr. at 56-57. Labels aside, however, Mr. Stanifer—an inventor on the '585 patent and Horizon engineer—confirmed

that the drawing both he and Mr. Walstrom (Horizon's technical expert) reviewed represented the product "supplied to Ford," and that the drawing "contains the design . . . ultimately embodied in the '585 patent." Appx3973 (76:13-24), Appx3980 (83:16-20); Appx3280-3283 (¶¶80-86) (Walstrom); Appx3343-3346 (¶¶22-23) (Stanifer); *see also* HBr. at 9 (comparing patent figure with product drawing). The evidence is sufficient under *Polaris* to find nexus between the claimed invention and the commercial product sold to Ford. The Board erred in requiring too strict a standard to find nexus. *See* HBr. at 58-61.

Northern Stamping next argues that the Board did not distinguish between what Horizon sold to Ford, and what was ultimately sold to Ford's customers, stating "[t]he Board never made any such distinction." NBr. at 58. But the Board did make that distinction in black and white. The Board dismissed Horizon's nexus evidence because "[t]here [was] no evidence showing what was sold to ***customers in Ford products***." Appx31 (emphasis added); *see also* Appx32. Northern Stamping misleadingly quotes this statement, leaving out "to customers in Ford products." NBr. at 58. It is evident that the Board was concerned with the final downstream customer, and not Ford itself, which was Horizon's customer.

The remainder of the Board's final decision evaluating Horizon's objective indicia evidence was tainted by the Board's flawed nexus conclusion. By discounting Horizon's evidence, the Board failed to fully evaluate Horizon's

nonobviousness argument and improperly shifted the burden to Horizon to prove patentability. As discussed in its opening brief, and in response to Northern Stamping's remaining arguments on objective indicia, this Court should consider Horizon's objective indicia evidence through the proper legal lens. *See* HBr. at 56-64.

Separately, Northern Stamping makes much of certain evidence not being admitted into evidence under 37 C.F.R. § 42.63(a). NBr. at 61-62, 64. But such evidence need not be admitted. The Board follows the Rules of Evidence, allowing an expert to "'base an opinion on fact or data in the case that the expert has been made aware of or personally observed.' The facts or data 'need not be admissible for the opinion to be admitted.'" *Ebay Inc. v. Glob. Equity Mgmt. (Sa) Pty. Ltd.*, No. IPR2016-01829, 2018 WL 1870503, at *3-4 (P.T.A.B. Apr. 18, 2018). Horizon's expert was made aware of certain information and properly used that in his expert report as a basis for his expert testimony. Appx3300-3301. The information Northern Stamping complains about therefore did not itself need to be admitted so long as Horizon's expert had personal knowledge about it, which he did.

Accordingly, this Court should at least remand so that the Board can determine nexus under the appropriate legal standard, and view Horizon's

objective evidence of nonobviousness with nexus established, rather than being "at or near zero." *See* Appx32.

## III. CONCLUSION

For the foregoing reasons, as well as those presented in Horizon's opening brief, this Court should reverse the Board's determination of unpatentability as to the Challenged and Substitute Claims. Alternatively, this Court should vacate and remand the Board's decision so that the Board may properly consider evidence in the first instance consistent with this Court's opinion.

Date: February 8, 2024

*/s/ Stephanie Hatzikyriakou*
Stephanie Hatzikyriakou
Phillip D. Wolfe
BAKER & HOSTETLER LLP
1735 Market Street
Suite 3300
Philadelphia, PA 19103-7501
(215) 568-3100

Christina J. Moser
Brendan E. Clark
Key Tower
127 Public Square
Suite 2000
Cleveland, OH 44114-1214
(216) 621-0200

*Attorneys for Appellant*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:**  23-1767

**Short Case Caption:**  Horizon Global Americas Inc. v. Northern Stamping Co.

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes ____6,999____ words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 02/08/2024

Signature: /s/ Stephanie Hatzikyriakou

Name: Stephanie Hatzikyriakou